# City of Mobile *v.* Kierman.

## *Action to Recover License Paid.*

(Decided Dec. 22, 1910.   Rehearing denied Jan. 12, 1911.
54 South. 102.)

1. *Municipal Corporation; Council; Manner of Acting.*—The legislative authority of the city is vested in the council as an organized body, and its will can be expressed only as prescribed by law; hence, an endorsement on the back of the petition for exemption from the payment of the license fee, and for the return of the amount paid "we will vote to grant this petition," signed by nine members of the council, was of no legal effect, although the nine constituted a majority of that body.

2. *Licenses; Exemption; Power of Municipality.*—In the absence of statutory authority therefor a municipality has no power to exempt a particular person from payment of a license fee imposed upon a particular occupation.

3. *Same; Charities.*—Under section 43 of the charter of the city of Mobile (Acts 1900-1, p. 2374, charities are not exempt from a license fee when doing business in the city through agents, since the state could not exempt such charities, nor empower the municipality to do so.

4. *Same.*—Where a charitable society contracted with an amusement company to hold a street fair in the city, the society to furnish the license and to receive a percentage of the receipts, and the amusement company was a purely business concern, the business was subject to a license as well as any other under section 43 of the charter of the city of Mobile, even if charitable enterprises are exempt.

APPEAL from Mobile Circuit Court.

Heard before Hon. SAMUEL B. BROWNE.

Action by Francis Kierman against the City of Mobile. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

The complaint was on the common counts, and the plea was the general issue, and the case was tried on the following agreed statement of facts:

(1) That the Jones M. Withers Camp is an association whose only objects and purposes and whose only powers are such as are consistent with the benevolent

and charitable purposes of caring, providing for, and ministering to the welfare of needy ex-Confederate soldiers, who by reason of the infirmities of age and early exposure in camps or on battle fields have become infirm.

(2) That the Jones M. Withers Camp entered into a contract on the 30th of January, 1906, with the New Orleans Mardi Gras Company, in which contract the said Jones M. Withers Camp bound itself to pay for and furnish to the New Orleans Mardi Gras Company, for exhibition purposes, grounds or lot located opposite the post office, known as the "Old Battle House site," and also to furnish all licenses, both city, state, and county, for all shows and concessions, etc.

(3) That the New Orleans Mardi Gras Company proceeded to erect a street fair on said Old Battle House site, but were not allowed to carry on any exhibition, under threats of arrest of the plaintiff in this cause, Francis Kierman, as agent of the said Jones M. Withers Camp, and of the managers of the said New Orleans Mardi Gras Company, by the police of the city of Mobile, acting under the orders of the mayor of the city of Mobile, in case the street fair was operated without the previous issuance of a license therefor by the city tax collector.

(4) It is further admitted that the license officer, Mr. Norton, and chief of police, Mr. Rondeau, also acting under the directions of the mayor of the city of Mobile, compelled the said Mardi Gras Company by threats of arrest to pay on behalf of the said Jones M. Withers Camp the sum of money described in the complaint as paid to the city for licenses, amounting to $143.75.

(5) That the said Jones M. Withers Camp was without any moneys whatever in its treasury to pay for

such licenses, and that said New Orleans Mardi Gras Company withheld said amount of $143.75 from said camp in final settlement with them.

(6) That on the 19th day of January, 1906, said camp, by plaintiff, as adjutant of said camp, and duly instructed by said camp so to do, petitioned the honorable mayor, councilmen, and aldermen of the city of Mobile to exempt them from all city licenses, and on the 15th day of February, 1906, said camp, by plaintiff, further petitioned said mayor, aldermen, and councilmen to refund to them the said sum of $143.75, so paid by said camp into the city treasury as before related, and as set out in exhibits annexed to this agreement initialed "A," "B," and "C."

(7) That the general council of the city of Mobile granted the petition of said camp on the 15th day of February, A. D. 1906, as appears by the copy of the minutes of the said general council annexed to this statement as exhibited thereto, initialed "D."

(8) That the mayor of the city of Mobile refused to comply with the orders of the said general council, and refused to instruct the city clerk to issue to plaintiff a check upon some bank as depositary of the moneys of the city of Mobile, and refused to countersign as mayor a check to be issued by the said city clerk in payment to said Jones M. Withers Camp, of the license money so ordered by said general council of the city of Mobile to be repaid to said Jones M. Withers Camp, notwithstanding that plaintiff and said camp have repeatedly demanded of said mayor that he do so.

(9) That under the ordinances of the city of Mobile all payments on account of the said city were then made by checks drawn by the city clerk upon some depositary of the moneys of the city and countersigned by the Mayor of Mobile.

(10) That plaintiff is the assignee of the rights and claims of the camp executed thereunder.

(11) That the exhibition of said New Orleans Mardi Gras Company was a street fair, consisting of many different side shows conducted and carried on by a concern known as the "New Orleans Amusement Company." That this concern carried on this show for gain and profit on the vacant lot of the burnt-down Battle House, southeast corner of Royal and St. Francis streets, in the city of Mobile, and under the said agreement with the said Jones M. Withers Camp No. 675, U. C. V. The latter was to have a certain proportion of the net receipts of the show. That the licenses taken out by said company under compulsion of the mayor and police as hereinbefore stated, are as follows:

"No. 1,851, City of Mobile, Feb. 14, 1906. Issued to New Orleans Amusement Company, for Jones M. Withers Camp, U. C. V: To carry on business of: Ferris wheel, $10.00; flying horses, $10.00; side show (George) $15,00; photographs, $25.00; nigger dodger, $3.75; cane rack, $3.75; knife rack, $3.75; two ball racks, $7.50. Total, $118.75. Expires Feb. 21."

No. 1,855, City of Mobile, February 15, 1906. Issued to New Orleans Amusement Company, for Jones M. Withers Camp, U. C. V., to carry on business of: Theatrical, musical, or similar exhibitions, $25.00."

(12) That on the 30th day of March, 1909, as shown by a copy of the petition annexed to this statement as exhibit thereto, the said Jones M. Withers Camp, No. 675, U. C. V., petitioned the city council of Mobile to make an appropriation sufficient to carry out the resolution of general council of the city passed February 15, 1906, and as shown by Exhibit D of this statement said petition was referred to the committee No. 2 of the said council, and by said committee reported back

to the council adversely, and said adverse action was concurred in by the council. All statements are subject to legal and proper objection for incompetency or irrelevancy.

Exhibit A was the certificate of license tax. Exhibit B was a petition for exemption from license tax, on which was indorsed, "We will vote to grant this petition," signed by nine members of the general council. Exhibit C was a petition to have the money refunded, on the authority of Exhibit B. Exhibit D was an extract from the minutes of the general council granting the petition to exempt the camp from license. Exhibit G was the assignment of the claim to Kierman. Exhibit E was the petition for an appropriation sufficient to carry out the resolution exempting the camp from license.

BURWELL B. BOONE, for appellant. The court takes judicial notice of the charter of cities.—*Albritton v. Huntsville,* 60 Ala. 486; *Arndt v. City of Cullman,* 132 Ala. 546. Under section 43 of said charter (Acts 1900-01, p. 2342) the council had power to levy the license, and having levied it, was without power to relieve the amusement company, shown by the statement of facts to be a business concern from the payment of city license.—*City of Laurens v. Anderson,* 75 S. C. 62; *State v. Gabroski,* 111 Ia. 496. The city has no authority to exempt a particular person from the payment of a license exacted of all other persons of like class.—*State v. Shadroi,* 98 Am. St. Rep. 828. It, therefore, follows that the court erred in the charges given.

FREDERICK G. BROMBERG, for appellee. Counsel insist that the action of the council of the city of Mobile amounted in law to a promise to pay plaintiff the sum of $143.75. Second that the agreement was a valid agree-

ment supported by a valuable consideration. In support of these propositions, counsel cites the various sections of the municipal charter of the city of Mobile.

SAYRE, J.—The reporter will state the facts. The plaintiff has nothing upon which to stand in a court of law. The unofficial action of a majority of the general council of the city of Mobile, by which they promised to vote to grant the petition of the Jones M. Withers Camp asking that the "street fair" be relieved of all city licenses, was of no legal consequence. The legislative authority of the municipality was vested in its council as an organized body, and its will could be expressed only in the manner prescribed by the law of its creation. The members of the general council, acting separately and severally, could do nothing.—McQuillan, Mun. Ord. § 91.

The subsequent adoption by the council of a motion that the petitioner be exempted from the payment of a license tax and the money refunded was of no more effect than the previous promise. It was void for lack of authority. "The power to exempt from taxation, like the power to tax, is an incident of sovereignty, and cannot be exercised by a municipal corporation, unless such power has been granted by the state."—*Thomas v. Snead,* 99 Va. 613, 39 S. E. 586. Judge Cooley, in his work on Taxation (3d Ed.) p. 344), discussing the question of equality and uniformity in taxation, says: "Pertaining as it does to the sovereign power to tax, the municipalities of a state have not the exempting power, except as they are expressly authorized by the state. And obviously it is not competent to confer a general power to make exemptions, since that would be nothing short of a general power to establish inequality." He cites a number of cases.

Section 43 of the act to establish a charter for the city of Mobile (Acts 1900-01, p. 2342), which was the charter of the city at the time of the transaction in question, provided that the general council should have "authority to assess and collect from all persons or corporations trading or carrying on any business, trade, or profession, by an agent or otherwise, within the limits of said corporation a license tax." Appellee contends that this authority did not reach to the case in hand, because so far as Camp Withers was concerned the enterprise was purely charitable. The state may exempt charities. This upon the ground that they perform a public service by relieving, to some extent at least, the state from expense.—Cooley, Tax. 348. But the state has not done so, nor had it empowered the municipality to do so. Besides, here the ends of business and charity were combined; charity on the part of the camp of Confederate Veterans, business on the part of the amusement company. The camp's connection with the enterprise was to furnish the license and receive an agreed per centum of the net proceeds. The amusement company carried on its business for gain and profit. Its connection with the charity was no doubt considered and was in fact no doubt a part of its stock in trade. It furnished the amusements and carried on the business. Its character and liability to taxation as a business concern were not to be avoided by devoting, for a consideration, a per centum of its profits to a charity. We feel entirely sure that the business so carried on was liable to taxation, along with every other business of like character.

Judgment should have been rendered for the defendant.

Reversed and remanded.

DOWDELL, C. J., and ANDERSON and EVANS, JJ., concur.